OPINION
{¶ 1} Defendant-appellant, Larry A. Randlett, appeals from judgments of the Franklin County Court of Common Pleas finding him guilty, pursuant to defendant's guilty pleas, of multiple counts of gross sexual imposition in violation of R.C. 2907.05, corruption of a minor in violation of R.C. 2907.04, disseminating materials harmful to a juvenile in violation of R.C. 2907.31, and sexual battery in violation of R.C.2907.03.
 {¶ 2} According to the facts presented in connection with defendant's guilty pleas, the charges arose out of defendant's molestation of five teenage boys. In August 2000, defendant returned from California, where he had been living for about a year, to visit the W. family. He had befriended two teenage boys in the family, J.W. and K.W.K.W.'s friend, B.P., was with them the day of defendant's visit; J.W. was in college.
 {¶ 3} Defendant apparently was working for a racing team at the time, so defendant and the boys went to Mid-Ohio during the day. They returned that evening to the W. residence. K.W. and B.P. were in K.W.'s room with defendant, where defendant was showing them a computer program on aviation. K.W. was called downstairs to the telephone to speak to his brother, J.W., leaving B.P. alone in the room with defendant.
 {¶ 4} A few moments later, K.W.'s mother came upstairs, opened the door, and observed defendant kissing B.P., who was at the time 14 or 15 years of age. "Defendant was on his knees next to [B.P.] who was sitting at a computer chair." (Tr. 34.) When confronted, defendant agreed he had a problem and swore it was the first time anything like that had happened; he stated he was seeking help the following week when he returned to California. The next day, K.W. and his mother met with B.P.'s mother to discuss the situation.
 {¶ 5} After B.P. talked to his mother, they went to the Hilliard Police Department, and an investigation was begun. B.P. revealed a number of instances of abuse that occurred between June and October of the prior year (case No. 01CR-02-705; Franklin App. No. 03AP-385). B.P. stated he met defendant at baseball tryouts in middle school, where defendant would show up with vintage sports cars, a 1960's Cobra, a Mustang, and a Ferrari. When the boys came to look at the cars, defendant started passing out gifts and talking to them.
 {¶ 6} In June of that year, defendant asked the boys to come over to wash one of the cars, agreeing to give them $20. B.P. stated that when they were done washing the cars, defendant fondled B.P.'s penis; that was the beginning of the abuse. About a month later, B.P. went back to defendant's home, where defendant masturbated B.P. The activity culminated in October 1999 with defendant having oral sex with B.P. in defendant's hotel room.
 {¶ 7} The Hilliard detective also interviewed K.W. and his brother J.W. (case No. 01CR-08-4353; Franklin App. No. 03AP-387). J.W. met defendant in 1996, while he was a student at Hilliard Middle School. Defendant came to a soccer game, pulled up in a nice sports car, and started passing out gifts. Defendant would get the boys racing jackets and book bags related to his work with Team Rahal. Defendant's activity at the middle school led to the summer of 1997, when J.W. was at defendant's house doing odd jobs for him. Defendant wanted to weigh J.W., but defendant stated he needed J.W. to be naked; J.W. complied. Defendant weighed J.W. a second time without clothes, but in the second weighing defendant measured J.W.'s penis. The activities led to defendant's masturbating J.W., to mutual masturbation, and later to forced oral sex. According to the state, both J.W. and K.W. received extravagant gifts from defendant worth thousands and thousands of dollars, plus hours of free flying lessons, trips to Malibu Go Cart Racing, dinner, and cash.
 {¶ 8} The Hilliard detective also interviewed J.W.'s younger brother, K.W.K.W. met defendant through J.W. in the fall of 1996 and developed a relationship with defendant in which defendant took him go-carting. K.W.'s activities with defendant led to defendant asking K.W. to try on a pilot's suit; defendant told the boys he had been a pilot in the Air Force and had flown an F-16 fighter plane. As K.W. was naked, changing clothes, defendant began to hug and kiss K.W. Defendant progressed to more touching, to showing K.W. pornographic movies and to defendant's masturbating K.W. In fact, when K.W.'s family was away for work trips or conventions, K.W. would stay with defendant, where defendant abused K.W. with mutual masturbation and forced oral sex.
 {¶ 9} According to the state, when the indictments on J.W. and K.W. were released to the press, the Hilliard detective received phone calls from additional people, the first being T.R. (case No. 02CR-03-1721; Franklin App. No. 03AP-388). A student at Hilliard Middle School, T.R. met defendant at a soccer game in the fall of 1993. At the conclusion of the game, defendant pulled his car out onto the field and popped open the trunk; he gave T.R. a ride a few practices later. The abuse with T.R. began with defendant's wanting to check T.R. for a hernia, reaching down into T.R.'s pants and fondling and masturbating T.R. The activity progressed to mutual masturbation, oral sex, and defendant's buying alcoholic beverages for T.R. Even though T.R. was under the age of 16, T.R. was allowed to drive defendant's cars whenever he chose. When T.R. was with defendant, T.R. was permitted to view pornography and drink, and defendant gave T.R. large sums of money that T.R. used to buy cocaine. By the summer of 1995, defendant took T.R. to a car show in Cincinnati, at which point he had anal sex with 15-year-old T.R. According to T.R., defendant had anal sex with T.R. between 25 and 30 times.
 {¶ 10} Lastly, B.D. came forward (case No. 02CR-03-1738; Franklin App. No. 03AP-386). B.D.'s father worked with defendant at Team Rahal, and when B.D. came to work with his father, defendant took an interest in B.D. According to B.D., the abuse began in June 1994, when he showered at defendant's apartment. Defendant walked in naked, had an erection, and attempted to kiss B.D. A short time later, B.D. was in one of defendant's cars, when defendant fondled him. The activity progressed to watching pornography in defendant's house with mutual masturbation. B.D. remembers February 7, 1996, his fourteenth birthday, because defendant engaged in fondling, masturbation, and oral sex with B.D. that day. B.D. reported that, in March 1996, defendant kissed, masturbated, and digitally penetrated him.
 {¶ 11} As a result of the investigation the Hilliard detective conducted, an indictment filed February 2, 2001, in case No. 01CR-02-705 (Franklin App. No. 03AP-385), charged defendant with ten counts, some with a specification, as follows:
Count 1: Gross Sexual Imposition
Count 2: Gross Sexual Imposition
Count 3: Gross Sexual Imposition
Count 4: Gross Sexual Imposition
Count 5: Rape
Count 6: Rape
Count 7: Sexual Battery
Count 8: Sexual Battery
Count 9: Gross Sexual Imposition
Count 10: Gross Sexual Imposition
 {¶ 12} By indictment filed August 1, 2001, in case No. 01CR-08-4353 (Franklin App. No. 03AP-387), defendant was charged, some with a specification, as follows:
Count 1: Gross Sexual Imposition
Count 2: Gross Sexual Imposition
Count 3: Gross Sexual Imposition
Count 4: Rape
Count 5: Corruption Of A Minor
Count 6: Rape
Count 7: Corruption Of A Minor
Count 8: Disseminating Matter Harmful To Juveniles
Count 9: Disseminating Matter Harmful To Juveniles
Count 10: Gross Sexual Imposition
Count 11: Gross Sexual Imposition
Count 12: Gross Sexual Imposition
Count 13: Gross Sexual Imposition
Count 14: Gross Sexual Imposition
Count 15: Gross Sexual Imposition
Count 16: Rape
Count 17: Gross Sexual Imposition
Count 18: Rape
Count 19: Corruption Of A Minor
Count 20: Rape
Count 21: Corruption Of A Minor
Count 22: Rape
Count 23: Corruption Of A Minor
Count 24: Rape
Count 25: Corruption Of A Minor
Count 26: Gross Sexual Imposition
Count 27: Gross Sexual Imposition
Count 28: Gross Sexual Imposition
Count 29: Gross Sexual Imposition
Count 30: Gross Sexual Imposition
Count 31: Gross Sexual Imposition
Count 32: Disseminating Matter Harmful To Juveniles
Count 33: Disseminating Matter Harmful To Juveniles
Count 34: Disseminating Matter Harmful To Juveniles
Count 35: Disseminating Matter Harmful To Juveniles
Count 36: Endangering Children
 {¶ 13} By indictment filed March 28, 2002, in case No. 02CR-03-1721 (Franklin App. No. 03AP-388), defendant was charged, some with a specification, with the following:
Count 1: Gross Sexual Imposition
Count 2: Gross Sexual Imposition
Count 3: Gross Sexual Imposition
Count 4: Rape
Count 5: Corruption Of A Minor
Count 6: Rape
Count 7: Corruption Of A Minor
Count 8: Rape
Count 9: Corruption Of A Minor
Count 10: Rape
Count 11: Corruption Of A Minor
Count 12: Rape
Count 13: Corruption Of A Minor
Count 14: Rape
Count 15: Corruption Of A Minor
Count 16: Rape
Count 17: Corruption Of A Minor
Count 18: Rape
Count 19: Corruption Of A Minor
Count 20: Rape
Count 21: Corruption Of A Minor
Count 22: Rape
Count 23: Corruption Of A Minor
Count 24: Rape
Count 25: Corruption Of A Minor
Count 26: Rape
Count 27: Corruption Of A Minor
Count 28: Rape
Count 29: Corruption Of A Minor
Count 30: Rape
Count 31: Corruption Of A Minor
Count 32: Rape
Count 33: Corruption Of A Minor
Count 34: Rape
Count 35: Corruption Of A Minor
Count 36: Rape
Count 37: Corruption Of A Minor
Count 38: Endangering Children
Count 39: Endangering Children
Count 40: Endangering Children
 {¶ 14} Lastly, by indictment filed March 29, 2002, in case No. 02CR-03-1738 (Franklin App. No. 03AP-386), defendant was charged with the following:
Count 1: Kidnapping
Count 2: Gross Sexual Imposition
Count 3: Gross Sexual Imposition
Count 4: Kidnapping
Count 5: Gross Sexual Imposition
Count 6: Kidnapping
Count 7: Gross Sexual Imposition
Count 8: Kidnapping
Count 9: Gross Sexual Imposition
Count 10: Gross Sexual Imposition
Count 11: Disseminating Matter Harmful To Juveniles
Count 12: Kidnapping
Count 13: Gross Sexual Imposition
Count 14: Kidnapping
Count 15: Rape
Count 16: Corruption Of A Minor
Count 17: Kidnapping
Count 18: Gross Sexual Imposition
Count 19: Gross Sexual Imposition
Count 20: Felonious Sexual Penetration
Count 21: Endangering Children
Count 22: Kidnapping
Count 23: Gross Sexual Imposition
Count 24: Kidnapping
Count 25: Gross Sexual Imposition
Count 26: Gross Sexual Imposition
Count 27: Kidnapping
Count 28: Gross Sexual Imposition
Count 29: Gross Sexual Imposition
 {¶ 15} Although defendant originally entered not guilty pleas to all counts, on February 11, 2002, defendant changed his not guilty pleas to guilty pleas on some of the charges; the state nolled the remaining counts. Specifically, in case No. 01CR-02-705 (Franklin App. No. 03AP-385), defendant entered guilty pleas to the following: Counts 1 through 4 — Gross Sexual Imposition, felonies of the fourth degree, Counts 7 and 8 — Sexual Battery, felonies of the third degree, and Counts 9 and 10 — Gross Sexual Imposition, felonies of the fourth degree.
 {¶ 16} In case No. 01CR-08-4353 (Franklin App. No. 03AP-387), defendant entered guilty pleas to the following: Counts 1 through 3 — Gross Sexual Imposition, felonies of the fourth degree, Counts 5 and 7 — Corruption of a Minor, felonies of the fourth degree, Count 8 — Disseminating Matters Harmful to Juveniles, a felony of the fifth degree, Counts 10 through 15 — Gross Sexual Imposition, felonies of the third degree, Count 17 — Gross Sexual Imposition, a felony of the third degree, Counts 19, 21, 23, and 25 — Corruption of a Minor, felonies of the fourth degree, Counts 26 through 31 — Gross Sexual Imposition, felonies of the fourth degree, Count 32 — Disseminating Materials Harmful to Juveniles, a felony of the fourth degree, and Count 34 — Disseminating Materials Harmful to Juveniles, a felony of the fifth degree.
 {¶ 17} In case No. 02CR-03-1721 (Franklin App. No. 03AP-388), defendant entered guilty pleas to the following: Counts 1, 2, and 3 — Gross Sexual Imposition, felonies of the fourth degree, Counts 5, 7, 9, 11, 13, 15, 17, and 19 — Corruption of a Minor, felonies of the third degree, all of which were to be sentenced under the law as it existed prior to Am.Sub.S.B. No. 2 ("S.B. 2"). In addition, defendant entered guilty pleas to Counts 21, 23, 25, 27, 28, 31, 33, 35, and 37 — nine counts of Corruption of a Minor, felonies of the fourth degree, all to be sentenced under the law as enacted through S.B. 2 and any pertinent amendments to it.
 {¶ 18} In case No. 02CR-03-1738 (Franklin App. No. 03AP-386), defendant entered guilty pleas to the following: Counts 2, 3, 5, 7, 25, and 26 — all Gross Sexual Imposition, felonies of the third degree, Counts 9, 10, 13, 18, 19, 23, 28, and 29 — all Gross Sexual Imposition, felonies of the fourth degree, and Count 16 — Corruption of a Minor, a felony of the third degree.
 {¶ 19} The trial court requested a pre-sentence investigation and set the matter for a sentencing and sexual predator hearing, which the trial court held on March 31, 2003. By judgment entries filed April 3, 2003, the trial court sentenced defendant to a total of 20 years of imprisonment.
 {¶ 20} Defendant appeals, assigning the following errors:
I. The trial court's imposition of consecutive sentences on defendant was not supported by the required findings pursuant to revised code2929.14(e)(4) or the evidence and was error.
II. The trial court's imposition of sentence of more than the statutory minimum was not supported by the required findings pursuant to revised code 2929.14(b) or the evidence and was error.
III. The trial court erred in finding the defendant to be a sexual predator as the state did not establish by clear and convincing evidence that defendant was likely to engage in the future in the commission of one or more sexually oriented offenses.
IV. The trial court erred in filing a judgment entry in 01CR-705 that imposed a greater sentence than that pronounced at the sentencing hearing.
V. The trial court erred in filing a judgment entry in 02CR-1738 that imposed a greater sentence that [sic] than pronounced at the sentencing hearing.
VI. The trial court deprived the defendant of due process when it utilized and relied on victim impact statements that were not made available to defendant or his counsel prior to or at the time of sentencing.
 {¶ 21} Defendant's first two assignments of error are interrelated; because they both challenge the trial court's sentencing procedures, we address them together. In his first assignment of error, defendant asserts the trial court failed to make the requisite findings and state the necessary reasons to support sentencing him to serve consecutive sentences. In the second assignment of error, defendant contends the trial court failed to state the necessary findings to support sentencing him to more than the statutory minimum, as defendant never before had served a prison term.
 {¶ 22} R.C. 2929.14(E) has been amended numerous times during the course of defendant's conduct encompassed in the indictments. Defendant, however, points to the following statutory language in support of his first assignment of error:
(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2) provides:
The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
(c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
 {¶ 23} Accordingly, not only must the trial court specify its findings from among those described in former R.C. 2929.14(E)(4), formerly R.C. 2929.14(E)(3), but it must also specify one of the findings set forth in former R.C. 2929.14(E)(4)(a), (b) and (c), formerly R.C. 2929.14(E)(3)(a), (b), and (c). Further, the court must set forth its reasons in support of those findings pursuant to R.C. 2929.19(B)(2)(c).
 {¶ 24} In accordance with R.C. 2929.14(E)(4), the trial court found that consecutive sentences were necessary to protect the public and to punish the offender. The court further determined that consecutive sentences were not disproportionate to the offense and the harm done. Finally, the trial court concluded under R.C. 2929.14(E)(4)(b) that the "harm is so great and unusual here that a single term of prison does not adequately reflect the seriousness of the Defendant's conduct." (Tr. 244.) Accordingly, the trial court complied with the requirements of R.C. 2929.14(E)(4); it made the necessary findings to support consecutive sentences. In compliance with R.C. 2929.19(B)(2)(c), the trial court stated its reasons for making those findings:
Again, I have to cite, five separate and distinct victims, multiple counts, multiple offenses against each, young teenage boys. Predatory scheme over seven years, only stopped when caught. Abused trust, creating great psychological harm, and it's been a life-altering experience in a negative way for each of the victims.
(Tr. 244.) Moreover, the evidence amply supports the trial court's findings and reasons. According to the facts presented in connection with defendant's guilty pleas, he methodically seduced and molested five teenage boys on multiple occasions over an extended period of time.
 {¶ 25} Pursuant to former R.C. 2929.14(B) and State v. Edmonson
(1999), 86 Ohio St.3d 324, 326, in order to impose more than a minimum sentence for someone who has not served a prison term, the trial court must find either that the shortest prison term would demean the seriousness of the conduct, or that the public would not be adequately protected from future crimes of the offender or others. The trial court is not required to state the reasons for its findings under the circumstances former R.C. 2929.14(B) encompasses.
 {¶ 26} In accordance with former R.C. 2929.14(B), the trial court determined that "the shortest sentence would demean the seriousness of the offenses and would not adequately protect the public." (Tr. 243.) Because the statutory sentencing scheme does not require the trial court to state the reasons for its findings under the circumstances prescribed in R.C. 2929.14(B), the trial court would not have erred in failing to state its reasons.
 {¶ 27} Nonetheless, the trial court, throughout the sentencing, explained its reasons and denoted the egregious aspects of defendant's conduct, including the victims' ages, and the psychological harm defendant inflicted on each of the victims. In addition, the trial court noted defendant's occupation at Rahal Racing, his access to all the "hot stuff" attractive to teenage boys, and his flying background, all of which defendant used to entrap the victims into the activities he proposed.
 {¶ 28} Given the foregoing, the trial court adequately complied with the requirements of former R.C. 2929.14(B) and R.C. 2929.14(E). Moreover, the trial court met the requirements of R.C. 2929.19(B)(2)(c) as it relates to R.C. 2929.14(E)(4). Accordingly, defendant's first and second assignments of error are overruled.
 {¶ 29} Defendant's third assignment of error asserts the trial court erred in finding him to be a sexual predator; defendant contends the record demonstrates he is not likely to re-offend. Defendant relies heavily on the testimony of his two witnesses, David J. Tennenbaum, Ph.D., and Teresa Decrescenzo, M.S.W. Because each expressed an opinion that defendant is not likely to re-offend, defendant contends the trial court's determination is not supported by the requisite clear and convincing evidence.
 {¶ 30} Sexual predator determinations have been held to be civil in nature. See State v. Newton (June 11, 1998), Franklin App. No. 97APA10-1353. The standard for assessing the manifest weight of the evidence in a civil case is whether the judgment is "supported by competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280-281.
 {¶ 31} When presented with a manifest weight argument in a criminal case, we engage in a limited weighing of the evidence to determine whether the judgment is supported by sufficient competent, credible evidence to permit reasonable minds to so conclude. State v. Thompkins
(1997), 78 Ohio St.3d 380, 388; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In either the civil or the criminal analysis, determinations of credibility and weight of the evidence remain within the province of the trier of fact. See, e.g., State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Whether we apply the civil or criminal test for assessing the manifest weight of the evidence, the result here is the same.
 {¶ 32} In order for defendant to be designated a sexual predator, the state was required to prove by clear and convincing evidence not only that defendant had been convicted of, or pleaded guilty to, committing a sexually oriented offense, but also that defendant is likely to engage in the future in one or more sexually oriented offenses. Former R.C.2950.01(E)(1) and former R.C. 2950.09(B)(3); State v. Eppinger (2001),91 Ohio St.3d 158, 161. Defendant does not dispute that sexually oriented offenses are involved in this case. Rather, defendant contends the state failed to present clear and convincing evidence that defendant is likely to commit other sexually oriented offenses, and the evidence is therefore insufficient to establish that defendant is a sexual predator.
 {¶ 33} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." Eppinger at 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469,477.
 {¶ 34} The purpose of R.C. Chapter 2950 is to protect the safety and general welfare of the people of this state. Former R.C. 2950.02(B);Eppinger at 165. Former R.C. 2950.09(B)(2) required the trial court to consider all relevant factors in making a sexual predator determination, including those enumerated in the statute. Eppinger at 166; State v.Maser (Apr. 20, 1999), Franklin App. No. 98AP-689. No requisite number of factors must be applicable before a defendant is found to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be appropriate. State v. Austin (Nov. 2, 2000), Franklin App. No. 00AP-184; Maser, supra. Even one or two statutory factors will suffice as long as the evidence of likely recidivism is clear and convincing. State v. Hardie (2001),141 Ohio App.3d 1, 5.
 {¶ 35} Defendant was born in 1947. At the time of these offenses, defendant was primarily in his late 40's and early 50's. He was aware of the tender age of the teenage boys who became his victims, and he should have matured to the point of knowing the wrongfulness of his conduct. See former R.C. 2950.09(B)(2)(a). By contrast, the victims in this case were young boys, ages 11 to 18. See former R.C. 2950.09(B)(2)(c). Further, defendant provided alcohol to at least one victim, to the point of alcohol poisoning. See former R.C. 2950.09(B)(2)(e).
 {¶ 36} The trial court further observed that defendant had multiple victims. See former R.C. 2950.09(B)(2)(d). Indeed, noting Ms. Decrescenzo's testimony that "the more events and the more victims equal greater likelihood to re-offend," (Tr. 216) the trial court stated that here "[w]e have five victims in 67 or 68 counts, offenses that he pled guilty to." Id.
 {¶ 37} While defendant had no prior criminal history, the trial court was inclined to look at the seven-year course of events at issue as prior offenses that simply were indicted and resolved at the same time. The trial court did not err by viewing the totality of defendant's course of action, as, even if the earlier events do not constitute prior convictions, they demonstrate a pattern of abuse over numerous years. See R.C. 2950.09(B)(2)(h). As the trial court explained, defendant enticed young teenage boys into his presence and under his influence, and then, after achieving a level of trust with them, he broke the trust with clear sexual acts in multiple events over many years, "a factor weighing in favor of a predator finding." See former R.C. 2950.09(B)(2)(j).
 {¶ 38} Despite the multiplicity of offenses, the age of the boys involved, and the duplicity with which defendant enticed the boys into his influence, defendant continues to suggest he is not a sexual predator, because he has acknowledged his offenses and is in treatment. Indeed, both Dr. Tennenbaum and Ms. Decrescenzo opined that defendant was not likely to re-offend. The trial court, however, is not required to believe the testimony of defendant's witnesses when, as in this case, the record provides reasons for the trial court's discounting their testimony. Here, the trial court explained at length why it found their testimony unpersuasive.
 {¶ 39} For example, the court noted that Dr. Tennenbaum found defendant to be a pedophile by definition, and Ms. Decrescenzo opined that pedophiles have a high likelihood of recidivism. Ms. Decrescenzo, however, contended defendant is not a pedophile, but an ephebophile. Although Ms. Decrescenzo attempted to explain the difference between the two categories, the trial court concluded "no significant definition was given." (Tr. 213.)
 {¶ 40} The trial court also noted that the testimony of both witnesses was "in a great deal fact driven, and not all the facts seemed to have been before them, or at least in many ways were put before them incompletely." (Tr. 212.) Indeed, the trial court observed that the person responsible for writing the pre-sentence investigation had several conversations with Ms. Decrescenzo and highlighted in the pre-sentence report that Ms. Decrescenzo found it significant that defendant had been absolutely forthright and truthful. Testimony at the hearing, however, revealed Ms. Decrescenzo was unaware of defendant's anal rapes of the victims.
 {¶ 41} Lastly, the trial court pointed out that neither of the witnesses addressed the factors the legislature specifically had directed the court to consider in former R.C. 2950.09(B)(2). Based on those factors, the trial court concluded defendant is likely to re-offend. As additional support, the trial court further noted that after defendant's arrest, an investigation was conducted of defendant's activities when he resided in California prior to his arrest. The investigation revealed that the adult residents of his neighborhood had concerns because defendant was "spending a lot of time with kids in the age range of 13 to 14 years of age, and they forwarded that information voluntarily to the investigators, who then subsequently made contact with these individuals and their families." (Tr. 58.) The activities involved expensive gifts, racing memorabilia, flying memorabilia, t-shirts, and included activities such as young men helping with miscellaneous chores around the house, cleaning cars, and waxing cars. No criminal charges arose out of the investigation, but the "grooming process" defendant used in California was virtually identical to that he had employed in Ohio. In Ohio, the process always led to sexual abuse. The court again viewed it as a factor in the continuing pattern of abuse defendant demonstrated.
 {¶ 42} Given the substantial evidence of defendant's activities, continuing at or around the time of some of the indictments at issue in this appeal and after his treatment had begun, the trial court did not err in finding clear and convincing evidence that defendant is a sexual predator. Defendant's third assignment of error is overruled.
 {¶ 43} Defendant's fourth and fifth assignments of error assert the trial court's sentence in some of its judgment entries varies from that pronounced in open court during the sentencing hearing. Specifically, defendant contends in his fourth assignment of error, that in case No. 01CR-02-705, the trial court imposed one-year sentences for Counts 1, 2, 3, 4, 9 and 10; as to Counts 7 and 8, the court imposed a three-year sentence on each count and then stated "[t]hese counts will run concurrent with each other in this case. There's a three-year sentence with respect to that case." (Tr. 245.) The Judgment Entry, however, provides that Counts 1, 2, 3, 4, 9, 10 and 7 are to be served concurrently, and Count 8 is to be served consecutively to all other counts and the other three cases. As a result, the trial court's judgment entry imposes six years, or double the sentence the trial court imposed at the sentencing hearing.
 {¶ 44} Similarly, defendant's fifth assignment of error asserts that in case No. 02CR-03-1738, the court imposed one and one-half year sentences on Counts 2, 3, 5, 7, 25, 26 and 16, and further stated "Count 2 and 3 will be consecutive, the rest will be concurrent. * * * There is a three-year sentence with respect to that case." (Tr. 247.) By contrast, the Judgment Entry stated that "Counts Two and Three are to run consecutive with each other, with all other counts, and further, consecutive with Case Nos. 01CR-4353, 02CR-1721 and 01CR-705." (April 3, 2003 Judgment Entry.) As defendant notes, the Judgment Entry imposes four and one-half years as the total sentence on that case, rather than the three years the court imposed at the sentencing hearing.
 {¶ 45} The state properly concedes the trial court erred in varying the judgment entries in the noted cases from the sentences imposed at the sentencing hearing. Defendant's fourth and fifth assignments of error are sustained, and the judgment of the trial court is modified to reflect the sentences imposed at the sentencing hearing.
 {¶ 46} Defendant's sixth assignment of error asserts the trial court deprived him of due process by relying on victim impact statements that were not made available to defendant or his counsel at the sentencing hearing.
 {¶ 47} The victim impact statements were first mentioned on March 31, 2003, the day of the sentencing and sexual predator hearing. At that time, the court noted that a pre-sentence investigation had been ordered, and the court had reviewed it. The court then inquired whether counsel had had an opportunity to see and review the pre-sentence investigation. Counsel for defendant responded that "as is typically the case, I was given the opportunity to review, I was not given access to the victim/witness impact statements nor, of course, the recommendation for the Court, but as far as the guts of the report, I have seen it and have reviewed it." (Tr. 49.)
 {¶ 48} At the conclusion of the state's evidence, the state sought the admission of exhibits, including the pre-sentence investigation. Defense counsel inquired whether the investigation included the victim impact statements and the recommendations of the probation department. Although the court indicated that its version did, the state said its exhibit did not. Defense counsel responded, "`[c]ause I've not seen any of that stuff." (Tr. 73.) The report was then admitted into evidence without objection. The witness statements came up later, when defense counsel again indicated he had not seen them. At the time of sentencing, the court referenced the victim impact statements. Defendant did not object to the court's relying on them as part of the sentencing procedure.
 {¶ 49} R.C. 2947.051(C) provides that "[a] victim impact statement prepared under this section shall be kept confidential and is not a public record * * *. However, the court may furnish copies of the statement to both the defendant or the defendant's counsel and the prosecuting attorney." One appellate district has rejected an argument similar to defendant's contentions and has determined a defendant is not denied due process or equal protection when a court exercises its discretion to deny the defendant access to victim impact statements. State v. Stewart,149 Ohio App.3d 1, 6, 2002-Ohio-4124. We, however, need not reach that issue, as defendant's failure to object to the trial court's use of victim impact statements requires a plain error review. Because this record does not demonstrate plain error, defendant's contentions are not persuasive.
 {¶ 50} Specifically, Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In State v. Barnes (2002),94 Ohio St.3d 21, 27, the Ohio Supreme Court recently noted that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.) "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 51} During the course of sentencing, the trial court stated, "[s]o with all of these impacts in mind, the Court believes the sentencing — the Court considers the impacts on the victims under2929.11 is significant." (Tr. 241.) Before so concluding, however, the trial court listed those aspects of the victim impact statements it believed to be significant and noted, "I have gone through the notes of the victim impact statements, made my own notes from them, just noticed such things, [B.P.] stating, who's now 17, 14 to 15 when these happened, nightmares, grades dropped from three point to 1.7, college plans got altered and changed, antidepressant meds, counseling for both [B.P.] and his mother, substance abuse problems." (Tr. 240.)
 {¶ 52} Similarly, as to another victim, the trial court stated "[K.W.] has the — has tried counseling and believed it was successful, had to move to father from mother, believes that all of this has been brought upon him by Defendant's conduct, feels very strongly about it. Sold prescription drugs, was expelled from school. * * * [K.W.] said he's lost the ability to trust people." (Tr. 240, 241.) As to J.W., the court stated "it destroyed his family relationships. * * * Those things are very deep and significant victim impacts." (Tr. 241.)
 {¶ 53} In a related vein, the trial court observed that T.R.'s relationship with defendant "* * * was a life-altering relationship, dropped out of high school, actually — or got kicked out of high school as a result, turned to drugs, fear of bringing forth these events, shame of them, received incredible gifts from the Defendant as part of inducement to stay in the relationship. And as clearly stated, he will never be over it." (Tr. 240-241.) Similarly, as to B.D., the trial court stated B.D. "listed all the ways in which the Defendant induced him into the relationships. And he didn't tell his father because he was afraid that his father would go to prison for taking his vengeance out on the Defendant." Id.
 {¶ 54} At that point, the trial court stated "[s]o with all those impacts in mind, the Court believes the sentencing — the Court considers the impacts on the victims under 2929.11 is significant." Id. Because the trial court placed on the record those aspects of the victim impact statements on which it relied to impose its sentence, the court in effect advised defendant of the content of the statements, and it further gave defendant the opportunity to respond, if appropriate. As a result, defendant was not sentenced on the basis of victim impact statements whose content was unknown to him. Thus, the record does not reveal plain error arising from defendant's contentions that he was denied due process because he did not view the victim impact statements the trial court considered in sentencing defendant. Defendant's sixth assignment of error is overruled.
 {¶ 55} Having overruled defendant's first, second, third, and sixth assignments of error, and having sustained his fourth and fifth assignments of error as noted, we affirm the judgments of the trial court, as modified to reflect the sentences the trial court imposed at the sentencing hearing in case Nos. 01CR-02-705 and 02CR-03-1738. As a result, in case No. 01CR-02-705, Counts 7 and 8 will be served concurrently with each other, producing a three-year sentence in that case. Similarly, in case No. 02CR-03-1738, Counts 2 and 3 are to be served consecutively, and the remaining sentences are to be served concurrently, resulting in a three-year sentence in that case as well. With those modifications, the judgments of the trial court are affirmed as modified.
Judgments affirmed as modified.
Petree, P.J., and Sadler, J., concur.